UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRENCE S. B.,[1]

                              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

                              **DECISION AND ORDER**

                              1:22-cv-0380 (JJM)

   This is an action brought pursuant to 42 U.S.C. § 1383(c)(3) to review the final

determination of the Commissioner of Social Security that plaintiff was not entitled to

Supplemental Security Income ("SSI") benefits.  Before the court are the parties' cross-motions

for judgment on the pleadings [6, 7].[2]  The parties have consented to my jurisdiction [9].  Having

reviewed the parties' submissions [6, 7, 8], the Commissioner's motion is granted, and plaintiff's

motion is denied.

                              **BACKGROUND**

   The parties' familiarity with the 1,106-page administrative record [4] is presumed.

In May 2019, plaintiff filed an application for SSI, alleging a disability beginning May 26, 2017

due to depression, anxiety, post traumatic stress disorder ("PTSD"), sleep apnea, and a herniated

---

[1]  In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]  Bracketed references are to the CM/ECF docket entries. Page references to the administrative
record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

disc.  Id. at 28, 241, 259.  After the application was denied, an administrative hearing was

conducted before Administrative Law Judge ("ALJ") Stephen Bell on July 19, 2021, at which

plaintiff, who appeared with an attorney, and vocational expert James Soldner testified. Id. at 51-

-81 (transcript of hearing).

Mr. Soldner testified that an individual with plaintiff's residual functional

capacity ("RFC") could perform the jobs of housekeeping cleaner, mail clerk, and "marker II".

Id. at 44, 75.  In addition, he testified that an employer's tolerance for off-task time is typically a

maximum of 10% time off-task.  Id. at 76-77.

Based upon the medical evidence and testimony, ALJ Bell found that plaintiff's

severe impairments were "malingering, bipolar disorder, [PTSD], adjustment disorder, antisocial

personality disorder, alcohol use disorder, polysubstance use disorder, opioid use disorder,

attention deficit-hyperactivity disorder, generalized anxiety disorder, major depressive disorder,

degenerative disc disease of all levels of the spine and morbid obesity ".  Id. at 30[3].  In order to

determine the severity of plaintiff's mental impairments, ALJ Bell considered the paragraph B

criteria in order to determine whether plaintiff's mental impairments "meet or medically equal

the criteria" of the listings.  He determined that plaintiff had the following limitations in the four

broad areas of functioning:

1.  Mild limitation in understanding, remember, or applying information;

2.  Moderate limitation in interacting with others;

3.  Moderate limitation in concentrating, persisting, or maintaining pace; and

4.  Moderate limitation in adapting or managing oneself.

---

[3]      Because plaintiff focuses in his appeal on the ALJ's analysis concerning his mental impairments
and related limitations, I consider only those impairments here.

Id. at 33-34.

   In order to determine the plaintiff's RFC, ALJ Bell considered functional assessments from multiple sources: consultative examiners Susan Santarpia, Ph.D. and John Schwab, D.O.; and state agency medical consultants L. Dekeon, Ph.D. and V. Ng, Ph.D.[4]

   Dr. Santarpia conducted a psychiatric evaluation, including a mental status examination.  Id. at 444-48.  She concluded plaintiff's attention and concentration were "[m]ildly impaired" and that he had a "mild to moderate" limitation in regulating emotions, controlling behavior, and maintaining well being.  Id. at 447.  Dr. Santarpia opined plaintiff was "within normal limits" with respect to all other functional areas, including:

- Understanding, remembering and applying simple and complex directions and instructions;

- Using reason and judgment to make work-related decisions;

- Interacting with supervisors, coworkers, and the public;

- Sustaining concentration and performing at a consistent pace;

- Sustaining an ordinary routine and regular attendance at work;

- Maintaining personal hygiene and appropriate attire; and

- Being aware of normal hazards and taking appropriate precautions.

Id. at 446-47.

   After conducting a review of the psychiatric evidence in the file, including the opinion of Dr. Santarpia, Dr. Dekeon opined that plaintiff's "psychiatric symptoms appear to be well-controlled provided he remains compliant with his substance abuse treatment".  Id. at 89.  Dr. Dekeon determined that plaintiff's psychiatric impairments were "non-severe".  Id.  Dr. Ng

---

[4]  Neither Dr. Dekeon's nor Dr. Ng's first names appear in the record.

reviewed additional medical evidence in the file at the time of his review.  He "affirmed" Dr. Dekeon's assessment.  Id. at 100.

In addition to the opinion evidence, ALJ Bell considered plaintiff's treatment records, statements he made to the SSA concerning his functional abilities, and his hearing testimony.  See Id. at 38-40.

Based upon all of the file evidence, ALJ Bell concluded that plaintiff had the RFC to perform light work, with several modifications.  He found Dr. Santarpia's opinion "somewhat" persuasive because he found some inconsistencies between her conclusions and her findings upon examination.  ALJ Bell did "not accept that the claimant can understand, remember, and apply complex directions and instructions as that appears to be somewhat inconsistent with the doctor's statement indicating the claimant exhibited mildly impaired attention and concentration".  Id. at 41.  He also found her opinion "inconsistent when she indicates the claimant can interact adequately with supervisors, coworkers, and the public, versus her statement the claimant has a mild to moderate impairment [ ] in regulating emotions and controlling behavior."  Id.  He did, however, "accept the claimant is able to understand, remember and apply simple directions and instructions and use reason and judgment to make work-related decisions".  Id.

Based upon the RFC and the vocational expert's testimony, ALJ Bell determined that plaintiff was able to perform jobs that exist in significant numbers in the national economy, and therefore was not disabled.  Id. at 44.  The Appeals Council found no basis to change ALJ Bell's decision. Id. at 1-4. Thereafter, this action ensued.

**DISCUSSION**

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

Plaintiff argues that "[d]espite the complexity of [p]laintiff's physical and mental conditions, the ALJ chose to reject all opinions and craft an RFC out of whole cloth".  Plaintiff's Memorandum of Law [6-1] at 19.  He contends that ALJ Bell "was not equipped to determine [p]laintiff's mental limitations" and "also failed to explain what evidence led [him] to conclude that [p]laintiff could perform the specific RFC." Id. at 19.   Secondly, plaintiff argues that ALJ Bell failed to include limitations in the RFC to account for the moderate limitations in concentration, persistence, and pace that he found plaintiff had with respect to his analysis of the paragraph B broad functional areas at step 3 of the disability evaluation process.  *See* id. at 21-23.  Finally, plaintiff argues that ALJ Bell "failed to properly consider Dr. Santarpia's opinion that [p]laintiff is mildly to moderately limited in [his] ability to regulate emotions, control behavior and maintain well-being", notwithstanding that he found her opinion to be partially

persuasive.  Id. at 23-27.  Specifically, plaintiff argues that ALJ should have incorporated "off-task time" into the RFC to account for plaintiff's limitations in this area.

The Commissioner responds that it is plaintiff's burden to prove his RFC is more restrictive than that found by the ALJ, but failed to do so.  Commissioner's Brief [7-1] at 10-11. More specifically, the Commissioner argues that: ALJ Bell's decision concerning plaintiff's mental and physical RFC is supported by substantial evidence, including the portions of the medical opinions that he found persuasive, information in plaintiff's medical records (*i.e.* findings upon examination, and treatment notes), and plaintiff's own claims; and that plaintiff's limitations in regulating emotions, controlling behavior, and maintaining well-being and in concentration, persistence and pace were accounted for in the RFC.  Id. at 10-21.  Finally, the Commissioner argues that remand is not warranted where, as here, the RFC was more limited than any of the medical opinions in the record.  Id. at 21-25.  For the following reasons, I agree with the Commissioner.

**B.    Did ALJ Bell Improperly Formulate the RFC?**

It is the ALJ's responsibility to "weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole".  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (Summary Order). In doing so, an ALJ may not "arbitrarily substitute [his/her] own judgment for competent medical opinion." Riccobono v. Saul, 796 F. App'x 49, 50 (2d Cir. 2020) (Summary Order).

However, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence." Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022).  Moreover, "[w]here . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity . . .

a medical source statement or formal medical opinion is not necessarily required". Monroe v.

Commissioner of Social Security, 676 F. App'x 5, 8 (2d Cir. 2017) (Summary Order). *See also*

Corbiere v. Berryhill, 760 Fed. App'x 54, 57 (2d Cir. 2019) (Summary Order) (despite the

absence of a medical source statement regarding the plaintiff's work related functional abilities

and an MRI that revealed "a small L4-5 disc protrusion and mild L4-5 facet joint changes",

treatment records indicating that the plaintiff could "stand and walk without difficulty" and had

"full lower extremity strength" constituted substantial evidence for the RFC); Cook v.

Commissioner of Social Security, 818 F. App'x 108, 109-10 (2d Cir. 2020) (Summary Order)

("although there was no medical opinion providing the specific restrictions reflected in the ALJ's

RFC determination, such evidence is not required when the record contains sufficient evidence

from which an ALJ can assess the [claimant's] residual functional capacity. Here, the treatment

notes were in line with the ALJ's RFC determinations").

       In this case, the ALJ was entitled to craft an RFC based upon all the evidence in

the record and to reject portions of medical opinions that were in conflict with other evidence,

such as treatment notes. *See* Patrick R. v. Commissioner of Social Security, 2022 WL 17247242,

*3 (W.D.N.Y. 2022) ("[i]It has been well-recognized that it is the ALJ who is tasked with

formulating an RFC based on a review of the entire record, and that it is within the ALJ's

discretion to resolve genuine conflicts in the evidence"). Moreover, it is not necessary for the

ALJ to find any particular medical opinion controlling or persuasive in order to make findings

that are based upon substantial evidence. *See* Schillo, 31 F.4th at 78 (rejecting the argument that

"having declined to afford controlling weight to any of the three physicians' opinions, the ALJ

was . . . prohibited from making an RFC finding whatsoever"). By departing from those

opinions, however, the ALJ was required to use the treatment notes, diagnostic tests, medical

opinions, and other "data points" to identify "with specificity" how the RFC was formulated. Schillo, 31 F.4th at 78 ("the ALJ accorded the treating physicians' opinions lesser and not no weight, she still considered their conclusions to assess Schillo's RFC.  The ALJ also looked to the other sources in the administrative record, including MRI results, x-ray results, and notes documenting Schillo's visits with other medical providers. Using these opinions and data points, the ALJ laid out with specificity Schillo's physical capabilities").  For the reasons that follow, I conclude that ALJ Bell properly exercised that authority.

### 1.    Plaintiff's Mental RFC is Supported by Substantial Evidence

ALJ Bell found Dr. Santarpia's opinion was "somewhat" persuasive.  She found only a "mild to moderate" limitation in plaintiff's ability to regulate emotions, control behavior, and maintain well being.  Administrative Record [4] at 447.  ALJ Bell explained his conclusion that Dr. Santarpia's opinion was only "somewhat" persuasive.  He found that Dr. Satarpia's opinion that plaintiff could "understand, remember, and apply complex directions and instructions" inconsistent with her finding upon examination that plaintiff "exhibited mildly impaired attention and concentration".  Id. He also found that portion of her opinion that plaintiff could "interact adequately with supervisors, coworkers, and the public" inconsistent with her opinion that plaintiff had a "mild to moderate impairment" "regulating emotions and controlling behavior".  Id.  He found persuasive, however, her opinion that plaintiff "is able to understand, remember and apply simple directions and instructions and use reason and judgment to make work-related decisions".  Id.

This analysis is reflected in the RFC.  ALJ Bell found that plaintiff was able to "perform simple, routine, and repetitive tasks and make simple work-related decisions".  Id. at 35.  He also incorporated limitations on interactions with others in the RFC, finding that plaintiff

"can occasionally interact with supervisors and coworkers, but . . . can never interact with the public".  Id.

ALJ Bell did not, as plaintiff asserts, "reject all opinions".  Plaintiff's Memorandum of Law [6-1] at 19.  Instead, he afforded it partial weight, finding some portions more persuasive than others.  This was not an error.  See Cottrell v. Commissioner of Social Security, 2019 WL 201508, *3 (W.D.N.Y. 2019) ("the ALJ did not wholly reject Drs. Fennelly and Toor's opinions; instead, she afforded them 'partial' and 'some' weight and . . . relied on portions of them to determine [plaintiff's] RFC.  Just because the ALJ did not afford either opinion controlling weight does not mean that she substituted her own view of the medical evidence for those opinions").

The RFC is not without the support of any medical opinion.  ALJ Bell's rejection of Dr. Santarpia's opinion that plaintiff has no limitations interacting with others and could understand, remember, and apply complex directions and instructions does not mean that her opinion is without evidentiary value.  Such an opinion is evidence that a plaintiff can also perform work with limits on interactions with others.  Further, her opinion explicitly stated that plaintiff retained the capacity to perform simple work, which ALJ Bell accepted.  Administrative Record [4] at 41.

Furthermore, there is other evidence in the record that supports the RFC.  ALJ Bell's RFC gives the plaintiff the benefit of the doubt and appears to credit some of the plaintiff's testimony concerning his functional abilities.  For example, with respect to his ability to get along with others, ALJ Bell indicated that "[t]reatment notes indicate the claimant demonstrates antisocial traits and may feasibly act violently in the community as he shows limited regard for the rights of others.  However, the provider stated this is not based on any

psychotic process". <u>Id.</u> at 39, *citing* <u>id.</u> at 734.  In addition, ALJ Bell cited the Function Report

that plaintiff submitted to the SSA, in which he reported he "sometimes . . . has difficulty getting

along with family, friends, neighbors, or others as he does not feel like socializing or being

bothered, and people make him angry sometimes." <u>Id.</u> at 39, *citing* <u>id.</u> at 276.[5]  Finally, the ALJ

noted that plaintiff reported to the consultative examiners that he socializes with friends and

family and was able to interact appropriately with the consultative examiners. Based on all of

this evidence, ALJ Bell explained:

> "Despite the fact that claimant was able to get along with the
> consultative examiner, I have limited the claimant to no interaction
> with the public.  In addition, as referenced above, the claimant
> testified during phases when he has anger episodes, he does not
> hurt anyone, he basically stated he gets more animated.  (His angry
> episodes can entail slamming the door or yelling, but again, he
> reiterated he would not [hurt] anybody as [it] is not in his
> character).  Thus, the claimant's own testimony does not support
> more than mild-moderate limitations with respect to his ability to
> interact with others."

<u>Id.</u> at 39.

ALJ Bell performed a similar analysis to elucidate his reasons for limiting

plaintiff to simple, routine, and repetitive tasks.  He noted that Dr. Santarpia found plaintiff's

"attention and concentration is mildly impaired", but that he could do "simple one-step, but not

two-step mathematical calculations", "serial 3s", "recall 3 of 3 objects immediately and 2 of 3

objects after delay" and "could recite 6 digits forward and 2 in reverse order".  <u>Id.</u> at 38.  He

noted plaintiff's statements in his Function Report that he "can pay bills, count change, handle a

savings account", and "plays video games every day".  <u>Id.</u>  He also identified statements that

---

[5]      Although the ALJ named the Function Report in the text of the decision, he cites to Exhibit 4F at
6 ([4] at 418).  This is a page of a medical report containing a list of medications and lab results.  The
Function Report appears in the Administrative Record as Exhibit 4E.  Page 6 of the Function Report ([4]
at 276]) contains the cited language.

plaintiff made to the consultative examiners concerning his activities, and mental status

examination findings in plaintiff's treatment notes.  Id.  After identifying specific evidence, ALJ

Bell explained:

> "Overall, in reviewing the totality of the evidence and considering
> the claimant's testimony, the evidence supports the claimant can
> perform simple, routine, and repetitive tasks and make simple
> work-related decisions.  As an additive note, the claimant testified
> he could concentrate on a movie for 2 hours if it was a good movie
> . . . The claimant also stated in a Function Report he can follow
> written and spoken instructions. . . . Thus, even the claimant's own
> self reports support he is capable of performing simple, routine,
> and repetitive tasks and he can make simple work-related
> decisions."

Id. at 38-39.

This was not an error. ALJ Bell appropriately relied upon evidence in the record

to support his conclusion and the limitation he incorporated into the RFC.  ALJ Bell's

explanation was sufficiently specific to satisfy his obligation "to construct an accurate and

logical bridge between his recitation of the facts and the conclusions he reached".  Lopez obo

Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020) (internal

quotation omitted); see also Ramsey v. Commissioner of Social Security, 830 F. App'x 37, 39

(2d Cir. 2020) (Summary Order) (finding no error where the ALJ "occasionally deviated from

consultative examiners' recommendations to decrease Ramsey's RFC based on other evidence in

the record" (emphasis in original)); Deborah Elaine L. v. Commissioner of Social Security, 2022

WL 2662974, *4 (W.D.N.Y. 2022) ("[i]t . . . was not error for the ALJ to afford Plaintiff the

benefit of the doubt and assess additional non-exertional limitations despite the lack of support

for such limitations in the medical evidence of record. The additional non-exertional limitations

assessed by the ALJ are related to Plaintiff's own testimony").

2.      **The ALJ Properly Accounted for Plaintiff's Limitations in Concentration, Persistence, and Pace**

Plaintiff argues that ALJ Bell erred by failing to adequately explain how the RFC accounted for plaintiff's limitations in concentration, persistence, and pace.  Plaintiff's Memorandum of Law [6-1] at 21-23.  Specifically, she argues that, because ALJ Bell found at step three of his analysis that plaintiff had a moderate impairment in that functional area, he was required to specifically explain how that limitation affected the RFC.  Id. at 22.

I agree with the Commissioner that "the analysis performed at step three of the sequential analysis is separate and distinct from the RFC analysis".  Commissioner's Brief [7-1] at 19.

> "[T]o the extent Plaintiff contends that the ALJ was required to expressly include the moderate limitations (in concentration, persistence and pace) identified at Step 3 in the RFC determination, such argument lacks merit because the ALJ's findings at step 3 of the sequential analysis are not an RFC determination. . . . Rather, Step 4 findings need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous."

Pidgeon v. Commissioner of Social Security, 2017 WL 4680412, *7 (W.D.N.Y. 2017).  Here, the ALJ satisfied that standard because he discussed evidence in the record demonstrating that plaintiff retained the capacity to perform simple, routine, repetitive tasks despite his limitations in concentration, persistence, and pace.

ALJ Bell noted that Dr. Santarpia found the plaintiff's "attention and concentration is mildly impaired".  Administrative Record [4] at 38.  Nonetheless, plaintiff retained the ability to perform activities like "pay bills, count change, handle [a] savings account", "play video games," "watch[] television, listen[] to the radio, and read[]", and

"concentrate on a movie for 2 hours". Id. In addition, the ALJ cited plaintiff's medical treatment records showing mental status exams "within normal limits" notwithstanding that at the time the same treatment notes indicated that plaintiff was requesting detoxification from alcohol and/or drugs. Id. The ALJ concluded that all of this evidence demonstrated that plaintiff "can perform simple, routing, and repetitive tasks and make simple work-related decisions". Id.

I agree with the Commissioner that this is substantial evidence that supports the ALJ's determination that plaintiff could perform simple work, notwithstanding any limitations in concentration, persistence and pace. *See* Commissioner's Brief [7-1] at 19-20. The SSA considers the ability to "maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)" a part of the "[u]nderstanding, carrying out, and remembering simple instructions" that is a part of the "[m]ental [a]bilities [n]eeded [f]or [a]ny [j]ob". Social Security Program Operations Manual System (POMS) DI 25020.010.B.2.a. Moreover, the ability to "maintain attention for extended periods of 2-hour segments (concentration is not critical)" is considered by the SSA as one of the "[m]ental [a]bilities [c]ritical [f]or [p]erforming [u]nskilled [w]ork". Id. 25020.010.B.3.d. "Unskilled occupations are the least complex types of work. Jobs are unskilled when persons can usually learn to do them in 30 days or less". SSR 82-41, Titles II and XVI: Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective February 26, 1979, 1982 WL 31389, *2 (1982).

Moreover, plaintiff points to no evidence in the record that specifically states that he is unable to sustain concentration and persistence for periods of up to two hours, or that he is incapable of performing simple work. *See* Plaintiff's Memorandum of Law [6-1] at 21-23. An

ALJ "is entitled to rely not only on what the record says, but also on what it does not say".  <u>Diaz v. Shalala</u>, 59 F.3d 307, 315 (2d Cir. 1995).

Accordingly, I find that ALJ Bell did not err in his analysis of plaintiff's limitations in concentration, persistence, and pace with respect to the RFC.

### 3. ALJ Bell Properly Accounted for Plaintiff's Limitations in Regulating Emotions, Controlling Behavior, and Maintaining Well-Being

For the reasons stated above, ALJ Bell properly incorporated into the RFC limitations on plaintiff's ability to interact with others in order to account for his limitations in regulating emotions, controlling behavior, and maintaining well-being.   Plaintiff argues that ALJ Bell "should have included additional limitations, such as greater off task time, into the RFC".  Plaintiff's Memorandum of Law [6-1] at 25.  "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ".  <u>Beaman v. Commissioner</u>, 2020 WL 473618, *6 (W.D.N.Y. 2020).   Plaintiff does not, however, point to any evidence in the record that suggests plaintiff requires such a limitation.  *See* Plaintiff's Memorandum of Law [6-1] at 23-27.

Moreover, the ALJ incorporated into his decision sufficient analysis to satisfy his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached" with respect to plaintiff's mild-to-moderate limitations concerning regulating emotions, controlling behavior, and maintaining well being.  *See*  <u>Lopez obo Y.T</u>, 2020 WL 4504987 at *2 (internal quotation omitted).   Where an ALJ's decision "gives no clue" how the RFC "accommodates or takes into account . . . moderate mental limitations", the ALJ's

findings at steps 4 and 5 of the sequential analysis are "unsupported by substantial evidence".

Reynolds v. Colvin, 2014 WL 4184729, *5 (N.D.N.Y. 2014).

However, that is not the case here.  ALJ Bell specifically cites to this finding in

Dr. Santarpia's report, finding it "inconsistent" with her statement that plaintiff can interact

adequately with supervisors, coworkers, and the public.  Administrative Record [4] at 41.  He

also engages in significant analysis of the record evidence concerning plaintiff's "social

functioning", which he finds is "consistent with an ability to perform a range of routine work

with limited social interaction".  Id. at 39.  ALJ Bell's analysis of both the record evidence and

Dr. Santarpia's opinion is consistent with his finding at Step 3 that "there is some evidence that

the claimant has difficulty interacting with others".  Id. at 33.

Accordingly, I agree with the Commissioner that the ALJ properly accounted for

plaintiff's limitations in the RFC.  *See* Commissioner's Brief [7-1] at 15-18.  Up to moderate

limitations in the functional area of regulating emotion, controlling behavior, and maintaining

well-being may be accounted for in an RFC by limiting a plaintiff to simple, routine work with

limited interactions with others.  *See* Michelle K. v. Commissioner of Social Security, 527

F.Supp.3d 476, 483 (W.D.N.Y. 2021) (RFC limiting plaintiff to "simple, routine, and repetitive

tasks, making simple work-related decisions, and occasionally interacting with supervisors,

coworkers, and the public" was consistent with limitations in doctor's opinion that included

moderate limitations in the ability to "regulate emotions, control behavior, and maintain well-

being"); *see also*  David B. v. Commissioner of Social Security, 2021 WL 6133282, *2-3

(W.D.N.Y. 2021) (affirming ALJ's determination limiting plaintiff to "simple, routine, repetitive

work which did not require more than occasional contact with others" where the consultative

examiner and state agency reviewer found plaintiff had, *inter alia*, mild-to-moderate limitations in regulating emotions, controlling behavior, and maintaining well-being).

Finally, plaintiff cites Jimmie E. v. Commissioner of Social Security, 2021 WL 2493337 (W.D.N.Y. 2021) to support his contention that a limitation to "simple, unskilled work" fails to account for a "'moderate' limitation in regulating emotion, controlling behavior, and maintaining well-being". *See* Plaintiff's Memorandum of Law [6-1] at 26. I agree with the Commissioner that Jimmie E. is distinguishable. *See* Commissioner's Brief [7-1] at 17. In Jimmie E., the consultative examiner found that the plaintiff had a "moderate" limitation in regulating emotion, controlling behavior and maintaining well-being, along with many other limitations in other functional domains. Jimmie E., 2021 WL 2493337 at *4-5. There, the record included evidence that plaintiff had physical altercations with others and had been involved in a "'road rage' incident which resulted in a car accident". Id. at *3. The vocational expert in that case testified that "an individual would be terminated if verbal altercations occurred after a warning" and that "physical altercations at the workplace were grounds for immediate termination". Id. at *5. The RFC there "included imitations of no public interaction, limited interaction with coworkers and supervisors, and performing simple, unskilled work". Id. The ALJ did not, however, "provide an explanation or discussion *how* the assessed limitations impacted plaintiff's ability to perform simple, unskilled work". Id. (emphasis in original).

Here, there were no records concerning physical altercations with others, or road rage incidents. Further, reading the ALJ's decision as a whole, the ALJ's logic and reasoning is apparent. The ALJ outlined evidence in the record concerning plaintiff's ability to interact with others, and to control his emotions in this regard. *See* Administrative Record [4] at 39. He noted several instances of plaintiff reporting that he socializes with family and friends and was able to

get along with the consultative examiner.  The ALJ nonetheless limited plaintiffs' interactions

with others in the RFC to account for his variable emotions:

> "Despite the fact that claimant was able to get along with the
> consultative examiner, I have limited the claimant to no interaction
> with public.  In addition, as referenced above, the claimant testified
> during phases when he has anger episodes, he does not hurt
> anyone, he basically stated he gets more animated.  (His angry
> episodes can entail slamming the door or yelling, but again, he
> reiterated he would not [hurt] anybody as [it] is not in his
> character).  Thus, the claimant's own testimony does not support
> more than mild-moderate limitations with respect to his ability to
> interact with others."

Id. at 39.  The ALJ again ties the RFC limitations in interacting with others to his ability to

regulate his emotions when he discusses Dr. Santarpia's opined limitations later in the decision.

"In addition, on its face, the doctor's medical source statement appears inconsistent when she

indicates the claimant can interact adequately with supervisors, coworkers, and the public, versus

her statement the claimant has a mild to moderate impairment . . . in regulating emotions and

controlling behavior".  Id. at 41.

Accordingly, I find that ALJ Bell's analysis, read as a whole, satisfies his

obligation "to construct an accurate and logical bridge between his recitation of the facts and the

conclusions he reached".  Lopez obo Y.T., 2020 WL 4504987 at *2 (internal quotation omitted).

He has adequately explained how he incorporated Dr. Santarpia's limitations into the RFC.

**CONCLUSION**

For these reasons, the Commissioner's motion for judgment on the pleadings [7] is granted, and plaintiff's motion [6] is denied.

**SO ORDERED**.

Dated: September 10, 2024

/s/ _Jerry J. McEn_

JEREMIAH J. MCCARTHY
United States Magistrate Judge